Peter Rukin, SBN 178336
Whitney Stark, SBN 234863
RUKIN HYLAND DORIA & TINDALL LLP
100 Pine Street, Suite 2150
San Francisco, CA 94111
Telephone: (415) 421-1800
Facsimile:  (415) 421-1700
E-mail: peterrukin@rhdtlaw.com
E-mail: whitneystark@rhdtlaw.com
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MICHAEL LAZARIN, STEPHEN KOHLER, and PAUL CAPANO on behalf of themselves and all others similarly situated,

      Plaintiffs,

      v.

PRO UNLIMITED, INC. and JUNIPER NETWORKS, INC.

      Defendants.

No.  5:11-cv-03609 HRL

**PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

Date:   June 5, 2012
Time:  10:00 a.m.
Judge: Honorable Howard Lloyd
Courtroom:  2 – 5th Floor

1    **TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2         PLEASE TAKE NOTICE that on June 5, 2012, at 10:00 am, or as soon thereafter as the

3    matter may be heard in the courtroom of the Honorable Howard Lloyd, in Courtroom 2 of the

4    United States District Court for the Northern District of California, located at 280 S. 1st Street, San

5    Jose, California, Plaintiffs will and hereby do make this unopposed motion for an order from this

6    Court granting preliminary approval of the proposed class and collective action settlement in the

7    above-entitled litigation pursuant to Fed. R. Civ. P. 23 and 29 U.S.C. §§ 201 et seq.  Through this

8    motion, Plaintiffs seek an order from the Court: (1) granting preliminary approval of the proposed

9    settlement; (2) conditionally certify for settlement purposes an FLSA Settlement Class; (3)

10   conditionally certify a California Class for settlement purpose; (4) approving the form, content and

11   method of distribution of the Notice; (5) appointing Simpluris, Inc. as the Claims Administrator;

12   (6) appointing Rukin, Hyland, Doria & Tindall LLP as settlement Class Counsel, and (7)

13   scheduling a hearing regarding final approval of the proposed settlement and Class Counsel's

14   request for attorney's fees, costs, and enhancement award payments.

15        This motion is based on the concurrently filed memorandum of points and authorities, the

16   declaration of Peter Rukin all other pleadings and papers on file in this action, and such argument

17   as the court may hear.

18

19   Dated:  April 20, 2012                     Respectfully submitted,

20

21                                              RUKIN HYLAND DORIA & TINDALL LLP

22

23                                              By:     _____/s/ Peter Rukin_____
                                                        Peter Rukin

24

25

26

27

28

1

## I.   INTRODUCTION

2

This motion seeks provisional certification of a class and collective action and preliminary

3

approval of a settlement which will provide significant financial benefit to employees of PrO

4

Unlimited, Inc. ("PrO") and Juniper Networks, Inc. ("Juniper") (collectively "Defendants") who

5

were not paid for overtime hours worked.  Plaintiffs Michael Lazarin, Stephen Kohler, and Paul

6

Capano ("Plaintiffs"), on behalf of themselves and the proposed Class have entered into a

7

Settlement Agreement ("Settlement" or "Settlement Agreement") with PrO that provides for a

8

lump sum cash settlement of $1,250,000 in return for a release and dismissal with prejudice of the

9

claims alleged against PrO and Juniper in this action.  The Net Settlement Fund will be distributed

10

to the approximately 50 Class Members who worked for Defendants during the class period  based

11

on the number of work weeks class members' worked during the class period and their average

12

weekly pay.

13

Plaintiffs and Class Members worked for PrO as Contingent Employees at Juniper.

14

Defendants treat Contingent Employees as exempt from the overtime requirements of federal and

15

state law and fail to pay them premium rate for the overtime hours they worked.  Plaintiffs

16

challenge this pay practice on the grounds that Defendants allegedly did not pay Contingent

17

Employees on a true "salary basis" within the meaning of the federal Fair Labor Standards Act

18

("FLSA") and California law, but instead allegedly reduced Contingent Employees' compensation

19

based on the quantity of work the employer provided.

20

The proposed Settlement is fair and reasonable in light of the risks Plaintiffs and Class

21

Members face in connection with the class certification and liability phase of this Case.  A

22

determination that Contingent Employees were in fact paid on a salary basis would effectively

23

dispose of the overtime claims of Plaintiffs and Class Members.  Plaintiffs' counsel believes that

24

the Settlement – negotiated at arm's length – is a fair and reasonable resolution of the claims in

25

light of this risk.  Accordingly, Plaintiffs respectfully request that the Court (1) grant preliminary

26

approval of the proposed settlement; (2) conditionally certify for settlement purposes an FLSA

27

Settlement Class; (3) conditionally certify a California Class for settlement purpose; (4) approve

28

the form, content and method of distribution of the Notice; (5) appoint Simpluris, Inc. as the

Claims Administrator; (6) appoint Rukin, Hyland, Doria & Tindall LLP as settlement Class

Counsel, and (7) scheduling a hearing regarding final approval of the proposed settlement and

Class Counsel's request for attorney's fees, costs, and enhancement award payments.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background and Parties' Contentions

PrO Unlimited, Inc. specializes in placing and managing contingent employees at its

customers' worksites around the globe.  Juniper Networks is a customer of PrO Unlimited

headquartered in Sunnyvale, California.

Each of the representative Plaintiffs was employed by PrO Unlimited to work exclusively

for Juniper Networks, was designated as a Contingent Worker, and was involved in performing

support functions (such as recruiting and staffing) for Juniper.  *See* Docket Number ("Dkt. No.") 5,

at ¶ 16 (First Amended Complaint).  Plaintiff Michael Lazarin worked for Defendants at Juniper as

a Recruiter from approximately March, 2008 to approximately November, 2009 and again from

approximately October, 2010 to January, 2011.  *Id*. at 10.  Plaintiff Stephen Kohler worked for

Defendants at Juniper as a Senior Staffing Manager from October, 2008 through October, 2009.

*Id*. at 11.  Plaintiff Paul Capano worked for Defendants at Juniper as a Recruiter from August, 2008

to January, 2010.  *Id*. at 12.

Plaintiffs contend that Defendants classified Contingent Employees as exempt from

overtime and failed to pay them the premium overtime rates required by federal and California law.

Plaintiffs further contend that Contingent Employees were not compensated on a salary basis;

rather, they allegedly were compensated based on the quantity of work the employer provided, and

their wages allegedly were subject to reduction because of variations in the quantity of work

performed.

Plaintiffs allege that Defendants misclassified Contingent Employees[1] as exempt from

---

[1] The Contingent Employees covered by this Settlement include only those employees who worked in the following job titles:  Agency Finance Management; Agency IT Management; Agency Marketing Management; Agency Recruiter; Agency Talent Acquisition; Agency Talent Acquisition-Recruiter; Contract Recruiter-APG; Contract Sr. Technical Recruiter; Manager, Contingent Workforce; Marketing Contractor; Recruiter; Sr. Recruiter; Sr. Talent

overtime because Contingent Employees allegedly were not guaranteed a weekly wage that was not subject to deduction based on the time worked each week, and that these less-than-salary-equivalent payments allegedly reflect a pattern or practice of salary basis violations, rendering Contingent Employees nonexempt from federal and California overtime requirements.  See 29 C.F.R. § 541.602(a) ("an employee will be considered to be paid on a 'salary basis' within the meaning of [federal overtime] regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employees compensation, which amount is not subject to reduction because of variations in the quality or quantity of work performed."); *Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001);; *Klem v. Cnty. of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir. 2000).

Defendants contend that Plaintiffs' claims are without merit, and assert factual and legal defenses to Plaintiffs' claims.  Defendants claim that their written policies and practices conform to the requirements of the salary basis test under California and federal law, and that the Contingent Employees are properly classified and paid as exempt employees under California and federal law. Defendants do not admit liability or wrongdoing through the Settlement, and the Settlement may not be construed or used as an admission by or against Defendants of any fault, wrongdoing or alleged liability.

## B.  Procedural History

On July 22, 2011, Plaintiffs filed this action in the United States District Court for the Northern District of California.  (Dkt # 1.)  On September 2, 2011, Plaintiffs filed an amended complaint alleging the following claims against ProO, Juniper, Juniper Networks Holdings International, Inc. and Juniper Networks (US), Inc. (1) failure to pay required overtime compensation under the FLSA; (2) failure to pay required overtime under California law; (3) failure to pay all wages due at termination under California law; (4) failure to provide accurate wage statement; (5) violations of California's Unfair Competition Law; and (6) Violation of the Labor Code Private Attorneys General Act (PAGA).  (Dkt. # 5.)

1    On September 27, 2011 the parties filed a stipulation requesting that this Court continue the

2    deadline for the parties Rule 26(f) Report and CMC conference because Defendant PrO retained

3    new counsel that required time to familiarize itself with the case.  (Dkt. # 19.)

4    On November 7, 2011, Defendant Juniper answered.  (Dkt. # 21.)  On November 22, 2011,

5    the parties filed a stipulation dismissing without prejudice Juniper Networks Holdings

6    International, Inc. and Juniper Networks (US), Inc.  (Dkt. # 27.)   On November 15, 2011, the

7    parties executed an agreement to toll the FLSA statute of limitations for all absent collective action

8    members, pending mediation of the case.  Rukin Decl., ¶ 7.

9    By November 15, 2011, PrO and Plaintiffs began discussing early resolution of the case.

10   On November 22, 2011, the parties filed a stipulation requesting a further continuance of the

11   deadlines for the Rule 26(f) Report and CMC to allow the parties time to focus on settlement

12   negotiations.  (Dkt. #28.)

13   Beginning in early November, 2011 PrO provided Plaintiffs with information, data and

14   documents relevant to claims in the case.  The information PrO disclosed included the total number

15   of putative class members, putative class member names and job titles, the number of workweeks

16   per class member and wage information.  Rukin Decl., ¶ 8.

17   Plaintiffs propounded written discovery, including requests for production of documents

18   and interrogatories to Juniper and PrO.  Defendants provided responses and several hundred

19   responsive documents in November 2011, including the contract for Contingent Workforce

20   Management between PrO and Juniper, the employee handbook, and Plaintiffs' employee files and

21   wage records.  Rukin Decl., ¶ 9.

22   After extensive negotiations, Pro and Plaintiffs reached a tentative agreement of a proposed

23   hybrid and collective class action settlement on December 29, 2011, which resulted in a

24   Confidential Memorandum of Understanding.  Rukin Decl., ¶ 10.  The parties subsequently

25   conducted confirmatory interviews with putative class members.  Rukin Decl., ¶ 11.  On March 19,

26   2012, PrO and Plaintiffs finalized and signed the Settlement Agreement for which Plaintiffs seek

27   preliminary approval in this motion.

28

### III. TERMS OF THE PROPOSED SETTLEMENT

The complete details of the Settlement are contained in the Settlement Agreement signed by the parties and attached as Exhibit 1 to the Declaration of Peter Rukin.  The Settlement Agreement is between PrO and Plaintiffs.  The following summarizes the Settlement Agreement's terms.

### A.  The Settlement Class

The Settlement Class is composed of the "California Class" and the "FLSA Class."  The California Class consists of all persons employed by Pro Unlimited, Inc. in Covered Positions who worked at Juniper between July 22, 2007 and preliminary approval of the Settlement, and who do not submit a valid request for exclusion (i.e. opt out of the Settlement).  Exh. 1, ¶ 2.  The FLSA Class consists of all persons employed by Pro Unlimited, Inc. in Covered Positions who worked at Juniper between July 22, 2008 and preliminary approval of the Settlement, and who affirmatively opt in to the Settlement by cashing a settlement award check.  Exh. 1, ¶ 2.  The Covered Positions for both Settlement Classes include the following job titles:  Agency Finance Management; Agency IT Management; Agency Marketing Management; Agency Recruiter; Agency Talent Acquisition; Agency Talent Acquisition-Recruiter; Contract Recruiter-APG; Contract Sr. Technical Recruiter; Manager, Contingent Workforce; Marketing Contractor; Recruiter; Sr. Recruiter; Sr. Talent Acquisition; Sr. Talent Acquisition Consultant; University Relations/Diversity Recruiter; and University Relations/Diversity Recruiter II (hereafter "Covered Positions").  Exh. 1, ¶ 2.

If a person worked in a Covered Position, but his or her name is not provided to the Claims Administrator, that individual shall not be deemed to be a member of the Settlement Classes for purposes of the settlement release.  Exh. 1, ¶ 2.

In order to receive a settlement payment under the Settlement, members of the Settlement Classes do not need to submit a claim form.  For the California class, if individuals do not opt-out, they will release their claims under the terms of the Settlement.  For the FLSA Class, class members need only cash settlement checks to opt-in.  Additionally, any Class Member whose notice is returned undeliverable with no forwarding address, after compliance with the Settlement

Administrator's mailing requirements, will be excluded from the Settlement Classes, will not be bound by the Settlement, and will not receive any Settlement Award.  Exh. 1, ¶ 2.

### B.  Relief to the Settlement Class

The Settlement provides that Pro will pay $1,250,000 (the "Maximum Settlement Amount") in settlement of the class claims.  *Id*. ¶ 13.  Payment for court-approved attorneys' fees and costs, court-approved enhancement awards to the Class Representatives, fees and expenses of the Claims Administrator, and payment of a PAGA penalty to the State of California will be deducted from the maximum total payment.  Exh. 1, ¶ 14(c).  The resulting Net Settlement Amount will be distributed to participating class members. *Id*.  Defendant's share of the payroll taxes attributable to the wage portion of the Settlement Awards will be paid separately and in addition to the Maximum Settlement Amount.  Exh. 1, ¶ 14(c).

Class members will be paid based on the total number of weeks worked in Covered Positions during the Class Period by all eligible Class Members.  The amount to be paid per workweek to eligible Class Members will be calculated by dividing the Net Settlement Amount by total the number of weeks worked by all eligible Class Members; the amount paid per workweek to each eligible Class Member will be adjusted up or down by a percentage of each eligible Class Member's average weekly pay rate compared to the average weekly pay rate for all eligible Class Members during the Class Period.  Exh. 1, ¶ 14(d).[2]

In the event there are any funds remaining in the Net Settlement Amount from un-cashed or expired checks, the following procedures will be followed:  If the value of the un-cashed amount is less than $30,000, the amount will be distributed to a *cy pres* beneficiary agreed to by the parties or decided by the Court.  In the event the value of expired and un-cashed checks exceeds $30,000, the amount shall be distributed as follows: (1) first to the remaining eligible Class Members who cashed their Settlement Award checks, up to an amount two times the amount of their initial settlement share; and (2) should any amount still remain, then to *cy pres* beneficiaries mutually

---

[2] Although each Class Members' settlement award will vary based on the number of work weeks and rate of pay, the approximate range each class member would recover per workweek under the Settlement is $300 to $1300.   Rukin Decl. ¶ 14.  The average number of workweeks worked by Class Members during the class period is 34 weeks.  *Id*.

agreed to by the Parties and approved by the Court, with 50 percent paid to a beneficiary selected by Plaintiffs and 50 percent paid to a beneficiary selected by Defendant.   Exh. 1, ¶ 18.

### C.  Settlement Notice, Claim, and Exclusion Procedures

The parties have agreed, subject to Court approval, to a notice plan which includes individual mailed notices that will provide the Settlement Class members with sufficient information to make an informed decision about how and whether to participate in the proposed settlement, object to the proposed settlement, or to exclude themselves from the Settlement Class. Exh. 1, 17.

Within 15 days after preliminary approval of the Settlement, counsel for Defendant shall provide the proposed Claims Administrator, Simpluris, Inc. each Class Member's name, last-known address, last-known email addresses, social security number, and workweeks and average weekly pay data during the Class Period.  Simpluris shall obtain updated address information for Class Members using a National Change of Address search, a "skip trace" search, and other means that Simpluris customarily uses to locate class members, and then, within 30 days after preliminary approval, shall mail to each Class Member the appropriate "Notice of Class Action Settlement."  If a Notice is returned with a forwarding address, Simpluris will immediately re-mail the Notice using that address information.  If a Notice is returned as undeliverable, Simpluris will perform a search for a more current address and re-mail the documents.  Exh. 1, ¶ 17(b).

The Notice of Class Action Settlement informs Class Members of all material terms of the Settlement, including the amount they should expect to receive under the Settlement, the procedures for participating in or objecting to the Settlement and the procedure for requesting exclusion from the Settlement.  Exh. 1, Exh. A.  The Notice also explains to Class Members how they can dispute the number of workweeks contained on their Claim Forms and includes the same release of claims that is contained in the Stipulation of Settlement.

Class Members will have 45 days from the mailing of the Class Notice to object to or request exclusion from the Settlement.  Exh. 1, ¶ 17(c)-(d).

### D.  Release of Claims

In exchange for payment of the Settlement Amount, the Representative Plaintiffs, all FLSA Class Members who submit claims, and all California Class Members who do not opt-out of the Settlement will release all claims against PrO and Juniper that were alleged in this case or that reasonably arise out of the facts alleged in the case.  Exh. 1, ¶ 19.

### E. Class Representative Enhancement Payments, Attorneys Fees and Costs, and Settlement Administration

The Settlement provides that deducted from the Maximum Settlement Amount will be sums for each of the following:  (1) service payments to the named Class Representatives, not to exceed $25,000 each, and subject to approval by the Court; (2) the fees of the Settlement Administrator, not to exceed $20,000; (3) Class Counsel's attorneys' fees and costs, not to exceed a total of 25% of the Settlement; and (4) payment of $7,500 to the State of California Labor and Workforce Development Agency in connection with Plaintiffs' PAGA claim.  Exh. 1, ¶ 14(c),(g)-(i).

### F. Payment

Within 45 days after the Settlement becomes final, the Settlement Award checks will be mailed to class members.  Settlement checks will remain valid for 90 calendar days from the date of issuance.  Exh. 1, ¶ 18.  Beginning 30 days after the settlement checks are mailed, Simpluris will contact all class members who have not yet cashed their settlement checks to confirm they received the checks.  *Id*.  Additionally, 60 days after the settlement checks are mailed, Simpluris will send a reminder postcard to all class members who have not cashed their settlement checks.  *Id*.

## IV.  ARGUMENT

### A. Preliminary Approval of the Settlement is Appropriate

The approval of a class action settlement is a two-step process under Fed. R. Civ. P. 23(e). *Armstrong v. Bd. Of School Dirs.*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998).  First, the Court must decide whether to grant preliminary approval of the settlement and order that notice of the terms of the settlement be sent to class members, including by determining whether the proposed settlement is "within the range of possible approval."  *Id*.  The purpose of the preliminary approval process is to determine whether the proposed settlement, when taken as a whole, is fundamentally fair, adequate, and

reasonable to the Class.  *See Dunleavy v. Nadler (In re: Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 458 (9th Cir. 2000); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Dail v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142, 1145 (M.D. Fla. 2005) (applying general class action settlement standards in FLSA case); *La Parne v. Monex Deposit Co.*, No. SACV 08-0302 DOC (MLGx), 2010 WL 4916606, at *1 (C.D. Cal. Nov. 29, 2010) (applying Rule 23(e) settlement standards in FLSA case).

The decision whether a proposed settlement is fair, adequate and reasonable to the class is committed to the Court's sound discretion.  *See Hanlon*, 150 F.3d at 1026; *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied, Byrd v. Civil Service Comm'n*, 459 U.S. 1217 (1983); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1988).  In exercising that discretion at the preliminary approval stage, the court should consider a variety of factors, including (1) whether the settlement was the product of collusion between the parties; (2) the strength of Plaintiffs' case; (3) the risk, expense, complexity, and duration of further litigation; (4) the risk of maintaining class certification; (5) the amount of settlement; (6) investigation and discovery; and (7) the experience and views of counsel.  *Hanlon*, 150 F.3d at 1026.  The Court also applies its discretion in light of the judicial policy favoring settlement of complex class action litigation.  *Officers for Justice*, 688 F.2d at 625 ("Voluntary Conciliation and settlement are the preferred means of dispute resolution.  This is especially true in complex class action litigation.").  As discussed below, application of the relevant factors here supports preliminary approval of this Settlement.

### 1.   The Settlement is the Produce of Serious, Informed, Non-Collusive Negotiation

As settlement inherently involves a potentially hard-fought compromise, a court should generally presume fairness at the preliminary stage of approval of a class action settlement so long as the settlement is recommended by experienced class counsel after arms-length bargaining.  *Berenson v. Faneuil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation, conducted by capable counsel, it is presumptively fair"); *Cicero v. DirecTV, Inc.*, No.

EDCV 07-1182, 2010 WL 2991486, at * 3 (C.D. Cal. July 27, 2010) (same).

In this case, the Settlement Agreement is the result of intensive, arm's-length negotiations involving experienced employment counsel well-versed in both the substantive law and class action litigation procedures and familiar with the legal and factual issues of this case in particular. Rukin Decl., ¶¶ 3-6.  Negotiations were conducted after relevant discovery and information was exchanged and over the course of several months.  Rukin Decl., ¶¶ 6-12.  Further, Plaintiffs conducted confirmatory interviews with putative class members after a tentative agreement was reached.  Rukin Decl., ¶ 11.  "Such negotiations are highly indicative of fairness" of the proposed Settlement.  *In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007).

### 2. The Settlement Contains No Obvious Deficiencies and Falls Within the Range of Possible Approval

In deciding whether the proposed settlement is adequate and falls within the range of possible approval, courts look to the strength of plaintiffs' claims, the risks plaintiffs' faced in pressing forward with their claims, and "plaintiffs' expected recovery balanced against the value of the settlement offer."  *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal.2009), *quoting In re Tableware Antitrust Litigation*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).  The Settlement's adequacy must be judged as "a yielding to absolutes and an abandoning of highest hopes . . . .'  Naturally, the agreement reached normally embodies a compromise; in exchange for the saving and cost and elimination of risk, the parties each gave up something they might have won had they proceeded with litigation."  *Officers for Justice*, 688 F.2d at 624 (*quoting Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

Here, an analysis of the Settlement shows that there are no grounds to doubt its fairness, that it has "no obvious deficiencies" and it is "within the range of possible approval."  *In re Vitamins Antitrust Litig.*, No. MISC 99-197 (TFH), MDL 1285, 2001 WL 856292, at *4 (D. D.C. July 25, 2001).

### a. The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation Support

**Preliminary Approval**

Plaintiffs contend that the structure of Defendants' pay practices allows for reductions in pay based on the quantity of work available, such that they allegedly do not receive a guaranteed weekly salary within the meaning of the salary basis requirement under the FLSA and California law, and that Class Members were misclassified as exempt from overtime laws.

While Plaintiffs contend that the data and documents produced in discovery, as well as the putative class member interviews, support their allegations that Contingent Employees were wrongly treated as exempt employees, they recognize that a finder of fact could reach a different conclusion. A trier of fact might determine that there were no reductions in pay based on the quantity of work performed, that such reductions were not sufficient to a failure to pay Contingent Employees on a salary basis, that Class Members' duties render them exempt, and that Contingent Employees were properly classified and paid as exempt employees. Without conceding that any of these results would be correct or appropriate, Plaintiffs recognize the risk of possible adverse outcomes.

Also, while Plaintiffs vigorously contend that the claims in this case are appropriate for class certification, it is expected that Defendant would contest certification in the absence of this Settlement. This Settlement avoids the risk that Plaintiffs would not prevail on their Rule 23 motion or defeat any decertification motion under 29 U.S.C §216(b). In sum, this Settlement avoids that substantial uncertainty, while ensuring that Class Members receive substantial consideration now for a release of their claims. See Rukin Decl., ¶ 13.

### b. The Settlement Consideration and Plan of Allocation Are Fair and Reasonable

The Settlement sum is fair and reasonable in light of the risks of further litigation. Based on Plaintiffs' counsel's valuation and overtime hours estimates, the Net Settlement Fund ranges between forty and eighty of the alleged damages potentially recoverable by the Class—a significant recovery in light of the risks of litigation. Rukin Decl., ¶ 13. Further, this Settlement affords relief to Class Members who likely would never have filed individual claims for unpaid overtime wages. Class Members may also have been reluctant to file individual claims because

they fear retaliation in an industry where they are frequently hired by the same Defendants.  Under the circumstances of the case, the amount of the Settlement is fair, adequate, and reasonable.  *See Dunleavy v. Nadler*, 213 F.3d 454, 459 (9th Cir. 2000) (finding a recovery of one sixth (16.67%) of the potential recovery adequate in light of the plaintiff's risks).

The plan of allocation of the Settlement to Class members is also fair and reasonable. After consultation the class representatives and joint interviews of class members, Counsel have no reason to believe that any one Contingent Worker Class Member would have worked materially more hours, on average, than any other Contingent Worker Class Member.  For these reasons, the Settlement provides that the Settlement shall be allocated based on workweeks worked by Class Members (a standard allocation methodology in wage and hour cases).

### 3. The Attorneys' Fees and Costs that Plaintiffs Intend to Request Are Reasonable

The Settlement provides that, prior to the Final Approval Hearing, Class Counsel may petition the Court for a total award of fees and costs of $312,500 (25% of the total amount paid under the Settlement).  Rukin Decl., Exh. 1, ¶ 16.  Plaintiffs submit that this provision is fair and reasonable given the time and expenses that Plaintiffs' counsel have devoted to this case and the result they have achieved for the Class.  Class Counsel's fees will be tied directly to the amount that is actually paid out to the Class, and is within the range of reasonableness under Ninth Circuit authority.  *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (twenty-five percent of the recovery is "benchmark" for attorneys' fees under the percentage of recovery approach.); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (usual common fund recovery is 20-30 percent).  The proposed Notice informs Class Members of the maximum amount that may be awarded to Class Counsel for their fees and costs.  The proposed Preliminary Approval Order provides that Class Counsel shall file their application for fees and costs 30 days prior to the final approval hearing and allows Class Members to file objections to the application up to 10 days before final approval.  Rukin Decl., Exh. 1, Ex. B.

### 4. The Proposed Service Awards to Class Representatives Are Reasonable

1     The proposed incentive awards are consistent with a fair, just, and adequate settlement.

2     Rukin Decl., ¶¶ 15-16.  In the Ninth Circuit, "[i]ncentive awards are fairly typical in class action

3     cases."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). "Courts routinely

4     approve incentive awards to compensate named plaintiffs for the services they provided and the

5     risks they incurred during the course of the class action litigation." *Cullen v. Whitman Med. Corp.*,

6     197 F.R.D. 136, 145 (E.D. Pa. 2000); *Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 368 (D.

7     Miss. 2003) (same). To assess whether an incentive payment is appropriate, courts balance "the

8     number of named plaintiffs receiving incentive payments, the proportion of the payments relative

9     to the settlement amount, and the size of each payment."  *Staton v. Boeing*, 327 F.3d 938, 977 (9th

10    Cir. 2003).

11    The Settlement provides that the three representative Plaintiffs Michael Lazarin, Steven

12    Kohler, and Paul Capano, shall each receive a service award of $25,000 subject to Court approval.

13    The payments to these three individuals are in recognition of the time and effort that they invested

14    in assisting Plaintiffs' counsel with the investigation, prosecution, and settlement of the case, and

15    accepting the risk of an adverse result.  Rukin Decl., ¶¶ 15-16.  Each of the Plaintiffs spent

16    significant time assisting Plaintiffs' Counsel with pre-filing investigation, reviewing documents,

17    and discussing the claims in the case.  Rukin Decl., ¶ 15.  In addition, the higher payments to the

18    representative Plaintiffs are in recognition of the additional obligation that they have been required

19    to accept in this Settlement because they executed a general release of all known and unknown

20    claims that they may have against Defendants.  Rukin Decl., ¶ 16.  Finally, the service awards to

21    the Plaintiff are in recognition of the risk of retaliation they undertook in prosecuting this action

22    when due to the nature of their work, they are often re-hired by the same Defendants.  Rukin Decl.

23    ¶ 16.

24    Further, the service award that Plaintiffs seek for the work they have performed in this case

25    are consistent with the range of incentive awards approved by other federal judges in class actions.

26    "Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards of $20,000

27    or more where . . . the class representative has demonstrated a strong commitment to the class."

28

*Garner v. State Farm Mut. Auto. Ins.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *17 n.8 (N.D. Cal. Apr. 22, 2010) (collecting cases).  *See also Van Vraken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (approving an incentive award of $50,000 to named plaintiff); *Bradburn Parent Teacher Store, Inc. v.  3M*, 513 F. Supp. 2d 322 (E.D. Pa. 2007) (incentive award of $75,000 to one named plaintiff); *Bynum v. Dist. Of Columbia*, 412 F. Supp. 2d 73 (D. D.C. 2006) (incentive awards of $200,000 divided among six named plaintiffs); *Van Vrancken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (incentive award of $50,000 to one named plaintiff).

### 5.   The Court Should Appoint Simpluris, Inc., to Administer the Settlement Claims

To ensure the fair and efficient administration of the Settlement, the Court should appoint Simpluris, an experienced claims administrator, to distribute the Notice and administer claims under the Settlement Agreement.  Rukin Decl., ¶ 17.  In return for its work, Plaintiffs anticipate that Simpluris will be paid no more than $25,000 from the Settlement Amount to compensate it for: verifying Class Members' mailing addresses; mailing Notice via First Class Mail to the approximately 50 Class Members and potentially re-mailing returned notices to updated addresses; compiling and calculating Class Members' settlement payments; addressing any Class Members' objections to the pre-printed information on the Claim Form; communicating with counsel to determine settlement payments; distributing settlement checks to Class Members; and tax reporting.

### B.  Class and Collective Action Certification are Proper

Here, the parties are seeking to settle a California state law wage and hour class pursuant to Fed. R. Civ. P. 23 as well as a FLSA collective action class pursuant to 29 U.S.C. §216(b).  As discussed below, the standards for establishing a § 216(b) collective action are less stringent that those for a Rule 23 class.  However, even applying the more stringent Rule 23 standards, both the California Class and the FLSA Class meet these standards.  *See Misra v. Decision One Mortg. Co.*, No. SA CV 07-0994 DOC (RCx), 2009 WL 4581276, at *4 (C.D. Cal. Apr. 13, 2009) (applying Rule 23 standards to certification of FLSA collective action for settlement purposes); *La Parne v.*

*Monex Deposit Co.*, No. SACV 08-0302 DOC (MLGx), 2010 WL 4916606, at *1 (C.D. Cal. Nov. 29, 2010) (same).

### 1.   Standards governing Approval of Settlement Classes

In the context of granting preliminary approval of the Settlement, the Court must make a threshold determination as to whether the proposed Class meets the Rule 23 requirements.  *See* MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.632 (2004); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Namely, the Court must determine whether each proposed class satisfy the requirements that: (1) the individuals in the settlement class is so numerous that joinder would be impracticable; (2) there is a question of law or fact common to the class; the named plaintiffs' claims are typical of the claims of the absent settlement class members; and (4) Plaintiffs and their counsel will adequately and fairly represented the interests of the absent settlement class members.  *Hanlon*, 150 F.3d at 1019.  "In addition... the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2), or (3)."  *Id.* at 1022.

Under the FLSA, a collective action may be maintained by an employee or employees on behalf of others who are similarly situated.  29 U.S.C. §216(b).  In the initial "conditional" certification phase, the "similarly situated" standard is more permissive than Rule 23 and requires only that the named plaintiffs make a "modest factual showing sufficient to demonstrate that [he or she] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005).  Although this Settlement was negotiated before any motion for conditional certification, it provides that FLSA Class Members who desire to participate in the Settlement may opt-in by cashing their settlement checks, and only those Class Members who affirmatively opt-in to the Settlement release their claims.  Under these circumstances, the Court should approve the settlement if it is "present[ed] to the district court [as] a proposed settlement, the court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982).

1     Based on the applicable standards, as further discussed below, the Court should certify the

2  California Class and FLSA Class for settlement purposes.  Defendants do not oppose and have

3  agreed to certification for settlement purposes.

4                    **2.   The Settlement Class Satisfies the Requirements of 23(a)**

5     The proposed California Class and FLSA Class each satisfy all the requirements of Rule

6  23(a).  First, the classes are sufficiently numerous to satisfy the requirements of Rule 23(a)(1).  The

7  Ninth Circuit has held that a class of 20 persons satisfies numerosity, Rannis v. Recchia, No. 09-

8  55859, 2010 WL 2124096, at *5 (9th Cir. May 27, 2010), and courts have generally found the

9  numerosity requirement satisfied when a class includes at least 40 members.  *EEOC v. Kovacevich*

10  *"5" Farms*, No. CV-F-06-165 OWW/TAG, 2007 WL 1174444, at *21 (E.D. Cal. Apr.19, 2007).

11  Here, the proposed Classes of approximately 44 satisfy the numerosity requirement. Exh. 1, ¶14.c.

12     Second, Rule 23(a)(2) is satisfied because there is a question of law or fact common to each

13  class.  "Commonality only requires a single significant question of law or fact," the resolution of

14  which is "apt to drive the resolution of the litigation."  *Mazza v. Am. Honda Motor Co., Inc.*, 666

15  F.3d 581, (9th Cir. 2012), *citing Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

16  Here, such common questions include: whether allegedly subjecting Contingent Employees wages

17  to deductions based on the availability of work evidences an intent not to pay Contingent

18  Employees on a salary basis; whether the salary basis requirement allows employers allegedly to

19  reduce employee's weekly pay so long as the employee is guaranteed a weekly paycheck; and

20  whether Defendants' written policies support their position that Contingent Employees were paid

21  on a Salary Basis.

22     Third, the typicality requirement of Rule 23(a)(3) is satisfied because the claims raised by

23  Plaintiffs are typical of the claims asserted on behalf of the class.  Typicality is established if

24  "representative claims are reasonably co-extensive with those of absent class members; they need

25  not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  The claims of the representative

26  Plaintiffs in this case arise out of the same factual and legal circumstances as the claims of each

27  class member in the respective settlement classes.  Like all Contingent Employees, Plaintiffs were

28

1    classified as exempt, subject to the same timekeeping policies and practices, and the same alleged

2    failure to pay them on a salary basis.

3           Fourth, Plaintiffs and Plaintiffs' counsel satisfy the adequacy requirement of Rule 23(a)(4),

4    as well as the requirements of Rule 23(g).  Rule 23(a)(4) requires that the parties fairly and

5    adequately protect the interests of the class. The adequacy requirement is met where the

6    representatives: (1) will vigorously prosecute the interests of the class through qualified counsel,

7    and (2) have common, and not antagonistic interests, with unnamed members of the class.  *Hanlon*,

8    150 F.3d at 1020.  Rule 23(g)(1)(C) states that "[i]n appointing lass counsel, the court (i) must

9    consider: [1] the work counsel has done in identifying or investigating potential claims in the

10   action, [2] counsel's experience in handling class actions, other complex litigation, and claims of

11   the type asserted in the action, [3] counsel's knowledge of the applicable law, and [4] the resources

12   counsel will commit to representing the class."

13          Here, Plaintiffs' counsel Rukin Hyland Doria & Tindall LLP have actively identified,

14   investigated and prosecuted the claims that are the subject of this Settlement.  Rukin Decl., ¶¶ 6-12;

15   Plaintiffs' counsel have extensive experience in class action litigation, including class overtime

16   claims, and are thus well-qualified to be appointed as Class Counsel.  See Rukin Decl., ¶¶ 3-5.

17   Proposed class counsel has been appointed class counsel in other cases on numerous occasions.  *Id.*

18   Plaintiffs' counsel have demonstrated that they have the ability and resources to vigorously pursue

19   the claims asserted in this litigation—having already invested significant resources to investigate

20   the case and analyze the data produced by Defendant.  Rukin Decl., ¶ 18.

21          Finally, the interests of the named Plaintiffs and absent Class Members are not antagonistic.

22   Plaintiffs have the same claims to unpaid overtime as the members of the Settlement Class, have

23   suffered the same injury, and are entitled to the same remedy.  Beyond the modest enhancements

24   requested, Plaintiffs will receive a portion of the Settlement on the same terms as all other

25   Members of the proposed Class.  Plaintiffs' counsel is aware of no conflicts between the named

26   Plaintiffs and Class Members that would render them inadequate class representatives.

27          For all these reasons, Plaintiffs' counsel and named class representatives meet the adequacy

28

1    requirement of Rule 23(a)(4), and both law firms should be appointed as Class Counsel pursuant to

2    Rule 23(g).

3                    **3.   The Settlement Class Meets the Requirements of Rule 23(b)(3)**

4           The Settlement Class meets the requirements of Rule 23(b)(3), because common questions

5    "predominate over any questions affecting only individual members," and class resolution "is

6    superior to other available methods for the fair and efficient adjudication of the controversy."

7           First, the Class satisfies the predominance requirement.  "The Rule 23(b)(3) predominance

8    inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by

9    representation."  *Hanlon*, 150 F.3d at 1022.  "When common questions present a significant aspect

10   of the case and they can be resolved for all members of the class in a single adjudication, there is a

11   clear justification for handling the dispute on a representative rather than on an individual basis."

12   *Id*.  Here, there is sufficient cohesion to warrant class adjudication.  As discussed above, the salary

13   basis claim in this case by its nature turns on what legal conclusions could be drawn from

14   Defendants' payroll policies and practices and those common issues predominate over any

15   questions peculiar to individual Class Members.  *See Scholtisek*, 229 F.R.D. at 393 (finding Rule

16   23(b)(3) satisfied in salary basis case; "Germane to all class members' claims is the factual issue of

17   whether Eldre has a practice of making certain deductions from the pay of salaried employees, and

18   the legal issue of whether that practice is lawful.").

19          Second, Rule 23(b)(3) is satisfied because resolution of the issues in this case on a class

20   wide basis is "superior to other available methods for the fair and efficient adjudication of the

21   controversy."  The alternative to a single class action—numerous individual actions—would be

22   inefficient and unfair.  *Lerwell v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978);

23   *Hanlon*, 150 F.3d at 1023 ("many claims [that] could not be successfully asserted individually...

24   would not only unnecessarily burden the judiciary, but would prove uneconomic for potential

25   plaintiffs.").  Class adjudication is particularly appropriate here given that the core evidence in the

26   case is the identical payroll practices and policies for all Class Members, and it is particularly

27   inefficient to require individual adjudications of modest value claims in the face of such common

28

evidence and legal questions.

### C. The Proposed Notice is Adequate Such that the Court Should Order Distribution of the Notice to Class Members

Under Rule 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by a propos[ed settlement]." FED. R. CIV. P. 23(e)(1).  Class Members are entitled to receive "the best notice practicable" under the circumstances.  *Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985).  Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citations omitted).  Moreover, notice that is mailed to each member of a settlement class "who can be identified through reasonable effort" constitutes reasonable notice.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).

The proposed Notice and notice plan satisfy the requirements of Rule 23(e) and due process.  The Notice clearly explains the nature of the action and the terms of Settlement.  It identifies the Maximum Settlement Amount to be paid by Defendant, the settlement payment that the Class Member will receive if he or she participates in the Settlement, how settlement payments are calculated, and how the Class Member may claim his or her portion of the Settlement.  It further explains how to exclude oneself from the Settlement, how to object to the Settlement, and what impact a Class Member's action or inaction will have on the release of claims.

The proposed Notice plan ensures that the parties will make reasonable efforts to mail individual notice to all Class members.  Defendants will provide Simpluris with each Class member's last known address, phone number, and the last four digits of his or her social security number.  Simpluris will mail the Notice and Claim Form to the last known address of each Class Member, after first updating the address using the U.S. Postal Service's National Change of Address (NCOA) database as well as Accurint "skip-trace" search software.  In addition, Simpluris will conduct a skip-trace for all returned Notice packets, make phone calls to class members who have not cashed their settlement award 30 days after mailing to confirm receipt, and send postcards to Class Members who have not submitted claims or excluded themselves from the Settlement 60

after mailing the settlement checks.  This is the best notice practicable.  *See Misra*, 2009 WL 4581276 at *9 (use of NCOA database and appropriate skip tracing followed by mailed notice is the 'best notice that is practicable under the circumstances.'").  Because the content of the Notice and the method for distributing it to the Class Members fulfill the requirements of Rule 23 and due process, the Court should approve the proposed notice and the procedures for distributing it.

### D.  The Court Should Set a Final Approval Hearing

Finally, the Court should set a hearing for final approval of the Settlement on a date appropriately scheduled to follow the date by which Class Members must file objections to the Settlement and Plaintiffs' counsel's request for attorneys' fees.  The parties propose that if the Court grants preliminary approval on June 5, 2012, the final papers in support of the Settlement, including Plaintiffs' counsel's application for attorneys' fees and costs, be filed and served no later than September 14, 2012 and that the hearing on final approval of the Settlement be set on or after October 16, 2012.

### V.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the proposed settlement; (2) conditionally certify for settlement purposes an FLSA Settlement Class; (3) conditionally certify for settlement purposes a California Class; (4) approve the form, content, and method of distribution of the Notice and Proof of Claim Form; (5) appoint Simpluris as the Claims Administrator pursuant to the Settlement Agreement; (6) appoint Rukin Hyland Doria & Tindall LLP as settlement Class Counsel; and (7) schedule a hearing regarding final approval of the proposed Settlement and Class Counsel's request for attorney's fees and costs.

DATED:  April 20, 2012                          RUKIN HYLAND DORIA & TINDALL LLP


                                                By ___/s/_____
                                                    Peter Rukin
                                                    Attorneys for Plaintiffs

                                                    Peter Rukin, SBN 178336
                                                    Whitney Stark, SBN 234863

RUKIN HYLAND DORIA & TINDALL LLP
100 Pine Street, Suite 2150
San Francisco, CA 94111
Telephone: (415) 421-1800
Facsimile:  (415) 421-1700
E-mail: peterrukin@rhdtlaw.com
E-mail: wstark@rhdtlaw.com