United States District Court
For the Northern District of California

*E-FILED: July 11, 2013*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL LAZARIN; STEPHEN KOHLER; and PAUL CAPANO, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br>   v.<br><br>PRO UNLIMITED, INC., and JUNIPER NETWORKS, INC.<br>               Defendants.<br>_____/ | No. C11-03609 HRL<br><br>**ORDER GRANTING FINAL APPROVAL OF (1) CLASS AND COLLECTIVE ACTION SETTLEMENT; (2) CLASS REPRESENTATIVE ENHANCEMENT AWARDS; (3) ADMINISTRATIVE EXPENSES; AND (4) ATTORNEY'S FEES AND COSTS**<br><br>**(Re: Dkt. 41)** |

Michael Lazarin ("Lazarin"), Stephen Kohler ("Kohler"), and Paul Capano ("Capano") (collectively, "Named Plaintiffs" or "Class Representatives") move for final approval of a class and collective action settlement, a class representative enhancement award, administrative expenses, and attorney's fees and costs. (Dkt. 41).

### I.    BACKGROUND

Named Plaintiffs brought this putative class action in July 2011 and filed an amended complaint in September 2011. Named Plaintiffs originally sued PrO Unlimited, Inc. ("Pro Unlimited"), Juniper Networks, Inc. ("Juniper"), and Juniper's subsidiaries, but later dismissed Juniper's subsidiaries. Pro Unlimited is a staffing agency that manages temporary employees, independent contractors, freelancers, and consultants. Juniper is a networking company. Named Plaintiffs are "Contingent Workers": employees who worked at Juniper while on Pro Unlimited's payroll system. Lazarin and Capano worked as recruiters; Kohler worked as a senior staffing

manager. Named Plaintiffs claim that defendants improperly classified them as exempt from overtime wages, and subsequently failed to pay overtime wages that were due to themselves and other similarly situated Contingent Workers. Based on these allegations, Named Plaintiffs sought relief for violations of the Federal Fair Labor Standards Act, the California Business and Professions Code, California's Labor Code Private Attorneys General Act ("PAGA"), and other related provisions of the California Labor Code.

In March of 2012, the parties reached a settlement agreement. The following month, Named Plaintiffs moved for preliminary approval of the class and collective action settlement. The motion included the original Joint Stipulation of Settlement and Release Between Plaintiff and Defendant ("Settlement Agreement"), as well as a proposed notice to class members. (Dkt. 34-2).

The Court held a hearing on the unopposed motion and discussed some changes to the proposed notice. The Court granted preliminary approval of the class and collective action settlement, and included a revised notice as an attachment to its order (Dkt. 40-1) ("Notice"). The order granting the motion for preliminary approval specifically approved the form and substance of the version of the notice attached to the order, over any contradictory terms in the notice submitted by Named Plaintiffs.

In September of 2012, Named Plaintiffs moved for final approval of the class and collective action settlement, a class representative enhancement award, administrative expenses, and attorney's fees and costs. (Dkt. 41). Pro Unlimited filed a non-opposition brief, requesting that the Court grant Named Plaintiffs' motion. (Dkt. 42). The Court held a final approval hearing in October 2012. The parties appeared at that hearing and were heard by the Court. Despite the opportunity to object, outlined in the notice mailed to class members, no one did. The Court, however, sought further clarification on five issues: (1) the settlement amount being paid to each class member; (2) the settlement allocation formula; (3) the service awards to the Named Plaintiffs; (4) class counsel's request for attorneys' fees; and (5) the designation of a *cy pres* beneficiary.

In response to the issues raised at the final approval hearing, Named Plaintiffs submitted a supplemental memorandum. In January of 2013, counsel for Named Plaintiffs submitted an Amended Proposed Order Granting Final Approval of Class and Collective Action Settlement, Class Representative Enhancement Awards, Attorneys' Fees and Costs, and Judgment.

## II. DISCUSSION

### A. Jurisdiction

This Court finds that it has jurisdiction over the claims the members of the class asserted in this proceeding, personal jurisdiction over the settling parties (including all members of the settlement class), and subject matter jurisdiction to approve the Settlement Agreement filed with this Court.

### B. Class Definition

The parties agreed to certification of two settlement classes: 1) an "FLSA Settlement Class;" and 2) a "California Class." The FLSA Settlement Class includes all persons employed by Pro Unlimited in Covered Positions who worked at Juniper between July 22, 2008 and June 6, 2012, and who affirmatively opt in to the settlement by cashing a settlement award check. The California Class includes all persons employed by Pro Unlimited in Covered Positions who worked at Juniper between July 22, 2007 and June 6, 2012, and who did not submit a valid request for exclusion (i.e., opt out of the Settlement). Covered Positions include persons employed in any of the following job titles: Agency Finance Management; Agency IT Management; Agency Marketing Management; Agency Recruiter; Agency Talent Acquisition; Agency Talent Acquisition-Recruiter; Contract Recruiter-APG; Contract Sr. Technical Recruiter; Manager, Contingent Workforce; Marketing Contractor; Recruiter; Sr. Recruiter; Sr. Talent Acquisition; Sr. Talent Acquisition Consultant; University Relations/Diversity Recruiter; and University Relations/Diversity Recruiter II. (The FLSA Settlement Class and the California Class are referred to collectively as the "Settlement Classes" and "Class Members".) As counsel for Named Plaintiffs clarified at the final approval hearing, the same 46 people comprise both settlement classes.[1] The parties created two separate classes because Class Members can only waive their FLSA claims by affirmatively opting in to the

---

[1] Although the settlement classes potentially included 47 individuals, one individual opted out of the settlement.

3

FLSA Settlement Class. As discussed below, Class Members opt in to the FLSA Settlement Class by cashing a check that will be mailed to them.

### C. Terms of the Settlement Agreement

#### 1. Relief Offered

Under the terms of the Settlement, Pro Unlimited agreed to pay a maximum of $1,250,000.00 ("Maximum Settlement Amount"). Sums for attorneys' fees and costs, enhancement awards for the Class Representatives, employee share of payroll taxes, actual fees and expenses of the Settlement Administrator, and a PAGA penalty payment of $7,500 payable to the State of California, will be deducted from the Maximum Settlement Amount, resulting in a "Net Settlement Amount" for distribution to Class Members of approximately $844,000.

The Settlement Administrator will send Settlement Award checks to all eligible Class Members who did not actively opt out of the California Class or previously settle or release the claims covered by the Settlement. Class Members opt in to the FLSA Class, and release their claims under the FLSA, by cashing their settlement checks. In other words, and as described in the Notice sent to Class Members, members of the Settlement Classes were not required to submit a claim form in order to receive a settlement payment under the Settlement, and they will not waive their claims under the FLSA unless they cash their checks.

The Settlement Awards were calculated based on the number of weeks each eligible Class Member worked for Defendant in Covered Positions during the Class Period, and the individual Class Member's pay rate. The Claims Administrator calculated the Class Members payments by dividing the net Settlement Amount ($844,000.00) by the total number of weeks worked by all eligible Class Members (1,727), which resulted in a per week rate of $488.71. The amount per work week to each eligible Class Member was adjusted up or down by a percentage of each eligible Class Members average weekly rate compared to the average weekly pay rate for all eligible Class Members. The Claims Administrator took the relative average adjustment and multiplied that by the original per week rate of $488.71 to determine each member's first adjusted total award. The amount due to the eligible Class Members under this initial calculation totaled $873,731.35. The

4

Claims Administrator then adjusted the Class Members' final settlement award by dividing each eligible Class Members first adjusted total award by the sum of all eligible Class Members first adjusted total award ($873,731.35). In this way, the Claims Administrator determined what percentage of the Net Settlement Amount each class member was entitled to, based on the number of weeks worked and the rate paid to each Class Member. The Claims Administrator then calculated the Settlement Amount for each Class Member by multiplying that percentage by the Net Settlement Amount ($844,000.00). (Krista Tittle Declaration, Dkt. 47-4 ("Tittle Decl."), ¶ 4.)[2]

The Settlement Amount represents between forty and eighty percent of the overtime wages reasonably recoverable by the Class. (Supplemental Declaration of Peter Rukin, Dkt. 47-1 (Suppl. Rukin Decl."), ¶ 13.)

### 2. Scope of Release

Under the Settlement Agreement, the Named Plaintiffs, the FLSA Class Members who cash their settlement checks, and the California Class Members release all claims against Pro Unlimited and Juniper that were alleged in this case or that reasonably arise out of the facts alleged in the case. The Released Claims do not include workers' compensation claims, claims for wrongful termination, discrimination, harassment, or retaliation, or claims unrelated to work performed at Juniper. If Class Members do not cash their Settlement Award check, they will not be an FLSA Plaintiff and will not release any claims they may have under the FLSA. Unless Class Members

---

[2] By way of explanation, one of the Claims Administrator's Case Managers described how this formula was applied to calculate the Settlement Amount for a particular Class Member:
  a. We divided the Net Settlement Amount ($844,000.00) by the total work weeks (1,727) and then multiplied the 31 work weeks [worked by this member] which totaled $15,149.97 as this member's available amount. The per work week rate is $488.71.
  b. Next we took the Average weekly pay rate for this member (6,380.00) and divided that by the sum of all the members average weekly pay rates (149,698.56) to come up with the Relative Average Adjustment. In this members case it is 1.96.
  c. After that we took 1.96 and multiplied that by the original per week rate of $488.71 to come up with the Adjusted Weekly Rate ($958.10).
  d. Then we multiplied this members Adjusted Weekly Rate ($958.10) by the 31 work weeks which resulted in the First Adjusted Total Award $29,701.11.
  e. Due to the First Adjusted Total Awards being more than the Net Settlement Amount, we then took this members First Adjusted Total Award $29,701.11 and divided that by all members First Adjusted Total Awards $873,731.35 and multiplied that by the Net Settlement Amount of $844,000.00 which resulted in this members Settlement Amount of $28,690.44. (Tittle Decl. ¶ 5).

5

exclude themselves from the Settlement, or opt out of the California Class, all of the other claims alleged in the case or that reasonably arise out of the facts alleged in the case will be released upon final approval of the Settlement by the Court.

### 3. Payment to the Class Representatives

Named Plaintiffs Lazarin, Kohler, and Capano will each receive a service award of $25,000, in addition to each Named Plaintiff's individual Settlement Amounts.

### 4. Distribution of Uncashed or Expired Checks

Although the Settlement Agreement discusses distribution of unclaimed funds to a *cy pres* beneficiary (Dkt. 34-2, pp. 22-23), as a result of issues raised during the Final Fairness hearing, and as set forth in Plaintiffs' Supplemental Memorandum (Dkt. 47, p. 18-19), and the Amended Proposed Order Granting Final Approval (Dkt. 49, , p. 7), the parties agreed that any unclaimed funds will be sent to the State of California unclaimed property fund and /or to the remaining eligible Class Members who cashed their Settlement Award checks, pursuant to the following protocol:  In the event the value of expired and un-cashed checks is less than $30,000, the amount will be paid to the State of California Unclaimed Property Fund in the name of the individual or individuals whose check(s) remain un-cashed, so that the monies remain available for collection at a later date.  In the event the value of expired and un-cashed checks exceeds $30,000, the amount shall be distributed as follows: (1) first to the remaining eligible Class Members who cashed their Settlement Award checks, up to an amount two times the amount of their initial settlement share; and (2) should any amount still remain, then to the State of California Unclaimed Property Fund in the name of the individual or individuals whose check(s) remain un-cashed on a *pro rata* basis (i.e., based on the allocation formula).

Accordingly, **despite the designation in the Settlement Agreement (Dkt. 34-2, pp. 22-23), any funds remaining in the Net Settlement Amount from uncashed or expired checks will be sent to the State of California and/or to the remaining eligible Class Members, pursuant to the process outlined above.**

### 5. Attorney's Fees

The Settlement Agreement provided for an award of attorneys' fees and costs not to exceed 25 percent of the Maximum Settlement Amount. Class Counsel's motion for fees and costs is discussed below in section II.F.

### 6. Settlement Administration

The parties agreed to appoint Simpluris, Inc. ("Simpluris") to perform the customary duties of the Claims Administrator.

### D. Notice to the Class

This Court preliminarily approved the notice procedure set forth in the Notice, which was attached to the Court's order granting preliminary approval of the class and collective action settlement (Dkt. 40-1). The Notice adequately described the Settlement Agreement, the request for incentive payments to the Named Plaintiffs, and Class Counsel's request for an award of attorney's fees and costs.

After the Court approved it, Simpluris mailed the Notice to all 47 individuals contained on the Class List via First Class mail. Four Notices were returned by the post office. Simpluris performed a skip trace for all Notices returned without forwarding addresses, and successfully remailed four returned Notices. In the end, all of the Notices were delivered to class members. (Mary Butler Decl., Dkt. 41-5 ("Butler Decl."), ¶¶ 8-9.) After one class member disputed the number of workweeks contained in his Notice, Simpluris investigated the workweeks provided by Pro Unlimited. (*Id.*, ¶ 10.) Pro Unlimited discovered that an inadvertent error had been made on the number of workweeks stated in the Notice for eight class members, so Simpluris then mailed notification of the corrected number of workweeks to each of those eight Class Members. (*Id.*, ¶ 10.) Neither the Court nor Defendants received any objections to the Settlement Agreement. One Class Member opted out, and one Class Member disputed the employment information provided by Pro Unlimited. One hundred percent of all Class Members have received notice and all Participating Class Members will be mailed settlement checks.

The Court concludes that the Notice was reasonably calculated under the circumstances to apprise Class Members of the pendency of this action and all material elements of the Settlement

7

Agreement. It provided the opportunity for Class Members to exclude themselves from, object to, or comment on the Settlement Agreement and to appear at the Final Fairness Hearing on their own behalf or through counsel. This notice satisfied both Federal Rule of Civil Procedure 23(c)(2)(B) (certification notice requires "the best notice that is practicable under the circumstances") and Rule 23(e)(1) (settlement notice must be directed "in a reasonable manner to all class members who would be bound").[3] It also properly informed class members of the amount of attorney's fees requested by Class Counsel as required by Federal Rule of Civil Procedure 23(h)(1). Notice given was due, adequate, and sufficient. It complied with the requirements of Fed. R. Civ. P. 23, due process, and any other applicable rules of the court.

### E. Motion for Final Approval

Named Plaintiffs moved the Court to resolve this case as a Settlement Class. In order to certify a Settlement Class, the requirements of Rule 23 must generally be satisfied. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (*citing Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)). However, in assessing Rule 23 requirements in the settlement context, a court may consider that there will be no trial. *See Amchem*, 521 U.S. at 620 ("court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

#### 1. Final Certification of Settlement Class

##### a. Requirements of Rule 23(a)

For certification of a settlement class, Rule 23(a) requires: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. In granting preliminary approval of the Settlement Agreement, this Court held that the requirements of Rule 23(a) were met.

**Numerosity**. The class here, consisting of approximately 46 class members, meets the numerosity requirement, as joinder of all members would be impractical. Fed. R. Civ. P. 23(a)(1).

---

[3] In class-action settlements, it is common practice to provide a single notice program that satisfies both of these notice standards. *See* DAVID F. HERR, ANNOTATED MANUAL FOR COMPLEX LITIGATION § 21.31 (4th ed. 2005).

**Commonality**. Further, this case involves common issues of fact and law for the class arising out of the alleged misclassification and subsequent wage and hour violations committed by Defendants. Fed. R. Civ. P. 23(a)(2).

**Typicality**. The claims of the Named Plaintiffs are typical of the Class Members, and arise out of the alleged misclassification and subsequent wage and hour violations committed by Defendants. Fed. R. Civ. P. 23(a)(3).

**Adequacy**. Finally, with respect to legal adequacy, two questions must be resolved: (1) do the Named Plaintiffs and Class Counsel have any conflicts of interest with other Class Members and, (2) have the Named Plaintiff and Class Counsel vigorously prosecuted the action on behalf of the class? *See Hanlon*, 150 F.3d at 1020.

First, Named Plaintiffs and their counsel do not have conflicts of interest with other Class Members that would defeat adequacy of representation in the context of the proposed Settlement Class and the notice provided. Each Class Member will receive a Settlement Amount based on his or her pay rate and number of weeks worked. *See Hanlon*, 150 F.3d at 1021 (adequacy was met when the settlement was "narrowly circumscribed" and each class member was treated identically; "[g]iven these careful precautions and safeguards, no improper conflict of interest existed").

As to the second question, Named Plaintiffs and their counsel have shown appropriate vigor in prosecution of the class claims. Named Plaintiffs' counsel has declared that he conducted the initial factual investigation, executed an agreement to toll the FLSA statute of limitations for all absent collective action members, propounded written discovery, including requests for production of documents and interrogatories, and reviewed discovery responses, including several hundred responsive documents. (Peter Rukin Decl., Dkt. 41-1 ("Rukin Decl."), ¶¶ 6-9.) Counsel also declares that he engaged in extensive negotiations before reaching a tentative agreement. (*Id.*, ¶ 10.) After reaching a tentative agreement, counsel conducted confirmatory interviews with putative class members. (*Id.*, ¶ 11.) Named Plaintiffs' counsel also has sufficiently shown that he is qualified to litigate this action and is experienced representing employees in individual and class action cases. (*Id.,* ¶¶ 3-5.) Accordingly, the Court is satisfied that Named Plaintiffs and their counsel are adequate representatives of the tentative Settlement Class under Rule 23(a)(4). *See Hanlon*, 150

9

F.3d at 1022 (finding "counsel's prosecution of the case sufficiently vigorous to satisfy any Rule 23(a)(4) concerns"). Therefore, all of the requirements of Rule 23(a) are satisfied.

### b. The Requirements of Rule 23(b)(3)

For certification under Rule 23(b)(3), a class action must meet two additional requirements: (1) common questions must "predominate over any questions affecting only individual members;" and (2) class resolution must be "superior to other available methods of fair and efficient adjudication of the controversy." *Amchem*, 521 U.S. at 615; Fed. R.Civ. P. 23(b)(3). With respect to Rule 23(b)(3), the requirements of predominance and superiority are intended to cover cases "'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem*, 521 U.S. at 615.

**Predominance**. In this case questions of law or fact common to Class Members concerning the alleged misclassification and subsequent wage and hour violations predominate over any questions affecting only individual members.

**Superiority**. This Court also holds that the tentative Settlement Class is superior to individual lawsuits. Any concern that aggregation of claims for trial could bring about the undesirable result of damages disproportionate to Defendants' conduct simply is not applicable here in the context of the proposed Settlement Class, where the relief is agreed upon and no trial will occur. *See Amchem*, 521 U.S. at 619-20. On the other hand, the amount awarded to each individual Class Member is based on each Class Member's pay rate and number of weeks worked. Consequently, the Court finds that the requirements of Rule 23(b)(3) are met by the proposed Settlement Agreement.

Finding the requirements of Rule 23(a) and 23(b)(3) satisfied, the court confirms and approves the Settlement Class certification.

### 2. Final Approval of the Settlement Agreement

This court may approve the class action settlement after hearing and upon a finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Therefore, the question is "not whether the final product could be prettier, smarter, or snazzier, but whether it is fair, adequate,

and free from collusion." *Hanlon*, 150 F.3d at 1027. Further, it is "the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Id*. at 1026. A settlement under Rule 23(e) requires that the Court balance a number of factors, including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement; and (9) the absence of collusion in the settlement procedure. *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Hanlon*, 150 F.3d at 1026. The relative importance of each factor is left to the sound discretion of the Court. *See* 5 Moore's Federal Practice, § 23.85(2)(a). "Not all of these factors will apply to every class action settlement. Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval." *National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

### a. The Strength of The Plaintiffs' Case

Named Plaintiffs contend that the structure of Defendants' pay practices allows for reductions in pay based on the quantity of work available, such that they do not receive a guaranteed weekly salary within the meaning of the salary basis requirement under the FLSA and California law, and that Class Members were misclassified as exempt from overtime laws. In their motion for final approval, however, Named Plaintiffs point out that, based on the data and documents produced in discovery and information obtained from Class Member interviews, a finder of fact could reach a different conclusion. As the Settlement Agreement provides Class Members with forty to eighty percent of the overtime wages reasonably recoverable by the Class, the Court finds that the Settlement Agreement reasonably accounts for the strengths and weakness of Named Plaintiff's case. Though amounts for penalties and liquidated damages are compromised, many Class Members may never have filed individual claims because of fear of retaliation in an industry where the same parties tend to do the hiring. And, Class Members do not pay attorney's fees out of their Settlement Amount. These factors were appropriately incorporated into the compromise.

### b. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

As mentioned above, based on the discovery conducted, Named Plaintiffs acknowledge the risk that a trier of fact might determine that there were no reductions in pay based on the quantity of work performed, that such reductions did not amount to a failure to pay Contingent Employees on a salary basis, and that Class Members' duties render them exempt. The Court finds that the Settlement Agreement appropriately accounts for this risk.

### c. The Risk of Maintaining Class Action Status Throughout Trial and the Amount Offered in Settlement

Named Plaintiffs contend that the claims in this case are appropriate for class certification, but Defendants would certainly have an argument against certification in the absence of this Settlement. The Court recognizes the risk of maintaining class action status throughout trial, particularly given that the Named Plaintiffs are recruiters and a senior staffing manager purporting to represent Class Members with a wide range of job titles, and, presumably, job responsibilities. The Court perceives the risk of maintaining class action status throughout trial, and finds that the Settlement Agreement and Settlement Amounts sent to each Class Member reflect this risk.

### d. The Extent of Discovery Completed

When litigation has proceeded to the point where the parties have a "'clear view of the strengths and weaknesses of their cases,'" this factor supports approval of a settlement. *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2007 WL 951821, *4 (N.D. Cal. Mar. 28, 2007) (quoting *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y.1985)). Here, Class Counsel conducted discovery and performed confirmatory interview with putative class members after a tentative agreement was reached. Through this process, Class Counsel approximated the amount of unpaid overtime purportedly owed to each individual Class Member, based on individual pay rates and numbers of weeks worked. These amounts form the basis of the Settlement Agreement. The parties reached a settlement before going to trial. This factor weighs in favor of approving the Settlement Agreement because the parties conducted enough discovery to approximate, in the event Named Plaintiffs were to prevail on their legal theory, the amount of unpaid wages owed to each Class Member.

### e. The Experience and Views of Counsel

12

In considering the experience and views of counsel, the Court finds that the settlement in this case is the product of arm's length negotiations that were conducted by capable counsel who are experienced in class action litigation. Counsel for both sides believe that the Settlement Agreement reflects the relative strengths and weaknesses of the parties' respective claims and defenses, as well as the risks presented in continuing the litigation. The experience and views of counsel weigh in favor of approval.

### f. The Presence of a Governmental Participant

Notice of the Settlement Agreement was not sent to the state or federal Attorney General's office. This factor therefore weighs against final approval of the Settlement Agreement, but the Court does not find that it warrants a rejection of the Settlement Agreement.

### g. The Reaction of the Class Members to the Proposed Settlement

The next factor that the court must consider is the reaction of the class to the proposed settlement. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Despite the opportunity, no Class Member has objected to the Settlement Agreement. Only one person opted out. The reaction of the Class Members to the proposed settlement supports the conclusion that the Settlement Agreement is fair, reasonable, and adequate.

### h. The Absence of Collusion in the Settlement Procedure

This court will now consider the procedure through which the settlement was reached in order to satisfy itself that the settlement was not the product of collusion. *See Young*, 2007 WL 951821, at *3; *Churchill Vill.,* 361 F.3d at 576-77. Here, Class Counsel experienced in employment litigation investigated and analyzed the claims asserted in this case through extensive document, information, and data exchanges. Counsel engaged in negotiations after discovery and information was exchanged, and over the course of several months. After a tentative settlement was reached, the parties conducted confirmatory interviews with putative class members. The Settlement Agreement appears to be the product of arms-length negotiations lasting about five months by the time Named Plaintiffs moved for preliminary approval of the settlement. Accordingly, the Court finds that the settlement procedure was without collusion; this factor weighs in favor of approving the Settlement Agreement.

### F. Motion For Attorney's Fees and Costs

13

When a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the percentage-of-recovery method or the lodestar method. *In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). "Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar. Applying this calculation method, courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *Id.* Special circumstances that may warrant a downward departure include, for example, "megafund" cases where a vast recovery amount is merely a factor of the size of the class and has no direct relationship to the efforts of counsel or the results obtained for class members. *See id.* (citing *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 339 (3d Cir.1998). Other factors courts consider in determining the reasonableness of a percentage-of-recovery award include: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *Knight v. Red Door Salons, Inc.*, No. 08–01520 (SC), 2009 WL 248367, *4 (N.D. Cal. Feb. 2, 2009). Of these factors, "[t]he overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Id.*

Class Counsel requests an award of attorneys' fees and costs in the amount of $312,500, which is 25% of the Maximum Settlement Amount. The request comports with the Settlement Agreement, in which Defendants agreed to pay an amount not to exceed 25% of the Maximum Settlement Amount.

Nothing in this case requires departure from the 25 percent standard award. Here, in comparison to some "megafund" cases, the size of the class is relatively small (46 individuals), and the individual recovery amount per Class Member is relatively large (an average of $18,347.83 per Class Member, which amounts to 40-80% of the overtime wages reasonably recoverable by Class Members). A fee award of 25% of the common fund bears a reasonable relationship to the overall result and benefit Class Counsel achieved for Class Members.

Further, in response to the Court's request at the Final Fairness hearing, Class Counsel submitted records that have allowed the Court to conduct a lodestar comparison. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050–51 (9th Cir. 2002) ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."). Class Counsel spent a total of 186.10 hours on the investigation, litigation, and settlement of this case. (Suppl. Rukin Decl., Ex. C). This total does not include any time spent on this case after November 1, 2012, though Class Counsel had anticipated spending time after this date administering the Settlement. (*Id.*, ¶ 18). These hours, at the rates charged by Class Counsel, result in a total lodestar of $92,824. (*Id.*, Ex. B). The requested $312,500 represents a multiplier of approximately 3.36 times the lodestar. The Court finds that the lodestar comparison does not warrant a downward departure from the 25% "benchmark" calculation. *See* 4 Newberg on Class Actions § 14:6 (4th ed.) ("Multiples ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied.").

**CONCLUSION**

Named Plaintiffs' motion for an order (1) granting final approval of a class and collective action settlement (2) approving an award of class representative service payments; (3) approving administrative expenses; and (4) approving attorney's fees and costs (Dkt. 41) is GRANTED according to the following terms:

(1) The Court designates Michael Lazarin, Stephen Kohler, and Paul Capano as Class Representatives, and Rukin Hyland Doria & Tindall LLP as Class Counsel;

(2) The Settlement Agreement (Dkt. 34-2) is expressly incorporated herein by reference, and the Court directs the parties to implement it, except for the provision discussing distribution to a *cy pres* beneficiary (Dkt. 34-2, pp. 22-23). Despite the fact that the Settlement Agreement directs distribution of unclaimed funds to an unnamed *cy pres* beneficiary, any unclaimed funds will be sent to the State of California unclaimed property fund and /or to the remaining eligible Class Members who cashed their Settlement Award checks, pursuant to the following protocol: In the event the value of expired and un-cashed checks is less than $30,000, the amount will be paid to the State of California Unclaimed Property Fund in the name of the individual or individuals

whose check(s) remain un-cashed, so that the monies remain available for collection at a later date. In the event the value of expired and un-cashed checks exceeds $30,000, the amount shall be distributed as follows: (1) first to the remaining eligible Class Members who cashed their Settlement Award checks, up to an amount two times the amount of their initial settlement share; and (2) should any amount still remain, then to the State of California Unclaimed Property Fund in the name of the individual or individuals whose check(s) remain un-cashed on a *pro rata* basis (i.e., based on the allocation formula);

(3) For purposes of settlement, the FLSA Plaintiffs shall consist of all persons employed by Pro Unlimited, Inc. in Covered Positions who worked at Juniper Networks, Inc. between July 22, 2008 and June 6, 2012, and who affirmatively opt in to the Settlement by cashing a settlement award check. The California Class shall consist of all persons employed by Pro Unlimited, Inc. in Covered Positions who worked at Juniper between July 22, 2007 and June 6, 2012, and who did not submit a valid request for exclusion (i.e., opt out of the Settlement). Covered Positions include persons employed in any of the following job titles: Agency Finance Management; Agency IT Management; Agency Marketing Management; Agency Recruiter; Agency Talent Acquisition; Agency Talent Acquisition-Recruiter; Contract Recruiter-APG; Contract Sr. Technical Recruiter; Manager, Contingent Workforce; Marketing Contractor; Recruiter; Sr. Recruiter; Sr. Talent Acquisition; Sr. Talent Acquisition Consultant; University Relations/Diversity Recruiter; and University Relations/Diversity Recruiter II. The "Class Period" for the FLSA Plaintiffs shall be from July 22, 2008 and June 6, 2012; the "Class Period" for the California Class shall be from July 22, 2007 and June 6, 2012. Any California Class Member who opted out of the California Class is not a FLSA Plaintiff and shall not receive a settlement check. The Settlement Classes shall not include any person who previously settled or released the claims covered by this Settlement, including any person who was previously paid or received an award through a civil or administrative action for the claims covered by this Settlement.

(4) The settlement set forth in the Settlement Agreement is fair, reasonable, and adequate under applicable state and federal laws;

16

(5) The notice provided to Class Members complied with the requirements of Fed. R. Civ. P. 23, due process, and any other applicable rules of the court;

(6) The settlement fund will be dispersed in accordance with the Settlement Agreement as detailed below:

- The Defendants pay a total of $1,250,000 to fully resolve the lawsuit ("Maximum Settlement Amount"), to be distributed as follows:

    a. Payment to the California Labor and Workforce Development Agency (LWDA) in the amount of $7,500 in connection with Plaintiffs' claims for civil penalties under the Private Attorneys General Act ("PAGA");

    b. Payment for the actual claims administration expenses incurred by Simpluris, Inc., not to exceed $11,000.00;

    c. Payment to Class Representatives Michael Lazarin, Stephen Kohler, and Paul Capano of an Enhancement Award of $25,000.00 each, for their service as Class Representatives;

    d. Payment of an award of attorneys' fees and costs in the amount of $312,500.00 as final payment for and complete satisfaction of any and all attorneys' fees and costs incurred by and/or owed to Class Counsel and any other person or entity related to Class Counsel, administered pursuant to the terms of the Settlement Agreement and transferred and/or made payable to Class Counsel;

    e. Payment to the FLSA Plaintiffs and the California Class pursuant to the procedures set forth in the Settlement Agreement;

(7) The Court orders the payment schedule be administered as provided within the Implementation Schedule set forth within the Court's Preliminary Approval Order, with the following revisions:

| | |
|---|---|
| Deadline for Defendant to pay, and the Settlement Administrator to distribute, the Settlement Awards, and the Court-approved attorneys' fees, costs, Enhancement Awards and settlement administration expenses | August 1, 2013<br><br>[21 calendar days after Settlement is Final and Effective under Paragraph 14(b)] |
| Deadline for Class Counsel to file joint request to obtain Court order to identify FLSA Plaintiffs covered by and bound to the Settlement | November 29, 2013<br><br>[120 calendar days after issuance of the Settlement Awards] |

17

(8) The Court enters judgment, and DISMISSAL of the entire Action WITH PREJUDICE, as of the filing date of entry of this Final Order, pursuant to the terms set forth in the Settlement Agreement. The Court retains jurisdiction over the interpretation, implementation and enforcement of the Settlement and all orders entered in connection therewith to the fullest extent necessary or convenient to enforce and effectuate the terms of the Settlement Agreement.

**IT IS SO ORDERED.**

Dated: July 11, 2013



HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C 11-03609 Order will be electronically mailed to:**

Baldwin J. Lee blee@allenmatkins.com, anestor@allenmatkins.com, ayarnell@allenmatkins.com, therrington@allenmatkins.com

Carol Josephine Morganstern carolmorganstern@rhdtlaw.com, reception@rhdtlaw.com

Cary G. Palmer palmerc@jacksonlewis.com, lorilynn.bauer@jacksonlewis.com, SacramentoDocketing@JacksonLewis.com

Heath Aaron Havey haveyh@jacksonlewis.com, SacramentoDocketing@Jacksonlewis.com

Joel Paul Kelly Kellyj@jacksonlewis.com, LosAngelesDocketing@jacksonlewis.com

Peter Scott Rukin peterrukin@rhdtlaw.com, alicetran@rhdtlaw.com, jnakamura@rhdtlaw.com

Whitney Stark whitneystark@rhdtlaw.com, alicetran@rhdtlaw.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**